# 2004 DTA 126

**TRIBUNAL DE CIRCUITO DE APELACIONES
REGIÓN JUDICIAL DE MAYAGUEZ**

VICTOR RIVERA HERNÁNDEZ, SECRETARIO DEL TRABAJO Y
RECURSOS HUMANOS DE PUERTO RICO, EN REPRESENTACIÓN
Y PARA BENEFICIO DE AMELIA GONZÁLEZ ALERS
Apelado

v.

ACADEMIA PENTECOSTAL BETHEL
Apelante

Núm. KLAN-04-00099

San Juan, Puerto Rico, a 30 de julio de 2004

Panel integrado por su Presidenta, la Juez López Vilanova,
y los Jueces Córdova Arone y González Rivera

López Vilanova, Jueza Ponente

## TEXTO COMPLETO DE LA SENTENCIA

El recurso de epígrafe se presentó ante el Tribunal de Primera Instancia el 29 de enero de 2004. La Academia Pentecostal Bethel recurre de la Sentencia dictada por el Tribunal de Primera Instancia, Sala de Mayagüez, quien, luego de un juicio en sus méritos, le condenó al pago de $2,531.42 a favor de la apelada por su despido injustificado.

En su escrito plantea, en esencia, que el foro recurrido erró al no determinar que la apelada fue contratada por tiempo determinado, al no resolver que medió justa causa para el despido; al determinar que la Academia no siguió un plan de cesantía por antigüedad y al no explicar cómo calculó la compensación concedida. [1] Con el beneficio de la transcripción de la prueba y el alegato de la apelada, procedemos a resolver los errores conjuntamente como lo hizo el apelante. Expongamos los hechos.

### I

El presente caso se origina cuando el Secretario del Trabajo presentó, en representación y beneficio de la Sra. Amelia González Alers, una querella ante el Tribunal de Primera Instancia, Sala de Mayagüez, bajo el procedimiento sumario establecido en la Ley 2 de 17 de octubre de 1961. En la misma se alegó que la Sra. Amelia González Alers prestó servicios para la Academia Pentecostal desde agosto de 1992 hasta el 26 de mayo de 2000 mediante contrato sin tiempo determinado. Que fue despedida el 26 de mayo de 2000 sin justa causa y sin pagarle la indemnización que por despido injustificado tenía derecho a recibir.

Surge de la transcripción y la documentación ante nosotros que el 2 de septiembre de 1992, la señora González Alers, firmó un documento titulado "*Acuerdo de Servicios*". En el mismo, ésta aparece denominada como "*el empleado*". El contrato dispone un período de duración de 2 de septiembre de 1992 al 30 de junio de 1993. Dispone un horario de trabajo de 8:00 a.m. a 12:30 p.m., a razón de un salario pactado de $5.00 por hora. El contrato reconocía a la señora González aquellas licencias de enfermedad, vacaciones y/o días feriados que concede la legislación vigente, así como aquéllas establecidas por la Oficina de Normas del Departamento del Trabajo mediante decretos. Dicho "*Acuerdo de Servicios*" fue admitido en evidencia en el juicio (Anejo R, Apéndice 40-41). La señora González y la Academia Pentecostal firmaron un segundo "*Acuerdo de Servicios*" el 22 de agosto de 1994. En éste, también se le denomina como "*el empleado*"; se establece un período de duración de 1° de septiembre de 1994 al 30 de junio de 1995; se dispone un horario de trabajo de 8:00 a.m. a 12:30 p.m. a razón de un salario de $6.50 por hora. También se le reconoció aquellas licencias por enfermedad, vacaciones y/o días feriados reconocidos por la legislación y las normas vigentes. El documento fue admitido en evidencia en el juicio. (Anejo Q, Apéndices 38-39).

El examen que hemos hecho de la prueba documental y de la transcripción que obra ante nosotros, **no** surge, como se reclama, que la aquí apelante haya presentado prueba de que la señora González hubiese dejado de trabajar para la Academia Pentecostal en el período de tiempo transcurrido entre su fecha de comienzo de trabajo y la fecha en que se suscribió el Acuerdo de Servicios de 22 de agosto de 1994.

La aquí apelante presentó en evidencia en el acto de juicio, como su Exhibit 7, un documento, fechado 22 de junio de 1995, bajo el timbre de la referida Academia dirigido a los maestros, en que se expresa que *"el año académico de 1994 está por concluir y se solicita de los maestros que expresen si están dispuestos a trabajar un (1) año más "para dicha parte"*. El mismo contiene un acápite marcado con una *"x"* en el que expresa: *"Estoy dispuesto a trabajar el próximo año para la Academia"*. Éste contiene la firma de la señora González. **En ningún lugar de ese documento se expresa** que ésta hubiese dejado de desempeñarse en sus funciones para con dicha parte. (Anejo L, Apéndice 31.)

Ni de la prueba testifical presentada, ni de la prueba documental admitida en evidencia en el acto de juicio, surge que la señora González y la parte aquí apelante hubiesen firmado contrato alguno de trabajo o prestación de servicios para el año académico 1995-1996. Sí surge que la Academia Pentecostal presentó un documento suscrito por ésta fechado 5 de junio de 1996, bajo el timbre de la Academia y firmado por su presidente, en el que se expresa que el año académico 1995-1996 está por concluir y se solicita de los maestros que expresen si están dispuestos a trabajar el próximo año académico con la parte querellada. El mismo también contiene un acápite marcado con una *"x"* en el que se expresa *"Estoy dispuesto a trabajar el próximo año para la Academia"* y contiene la firma de la señora González. El documento no expresa que la aquí apelada hubiese dejado de desempeñarse en sus funciones para con dicha parte como alega la Academia.

La apelada fue evaluada por la Academia Pentecostal en relación a su desempeño en el cargo de maestra de tercero a sexto grado durante el período de tiempo comprendido entre septiembre de 1995 y el 12 de junio de 1996, obteniendo una evaluación de *"Muy Bueno"* (Anejo S, Apéndice 42-46).

La señora González y la parte apelante firmaron otro *"Contrato de Servicios"* el día **13 de agosto de 1996,** donde se denomina a la apelada como *"el empleado"*; se establece un período determinado de duración que comenzaba el 13 de agosto de 1996 y culminaba el 30 de mayo de 1997; se dispone un horario de trabajo de 8:00 a.m. a 12:30 p.m., a razón de un salario pactado de $6.50 por hora y se le reconoce a la empleada aquellas licencias y reglamentación vigentes. (Anejo P, Apéndices 36-37).

Durante el acto de juicio, la parte apelante no aportó prueba documental ni testifical que demostrara que la señora González hubiese dejado de trabajar para la Academia Pentecostal en el período de tiempo transcurrido entre su fecha de comienzo de trabajo y la fecha en que se suscribió este documento titulado Contrato de Servicios fechado 13 de agosto de 1996.

La señora González y la parte apelante firmaron otro Acuerdo de Servicios para Personal Docente el día **25 de enero de 1998**, que establece un período determinado de duración desde el 4 de agosto de 1997 hasta el 29 de mayo de 1998; dispone un horario de trabajo de 4:00 p.m. a 5:00 p.m. y un salario pactado de $6.50 por hora y al igual que los otros; le reconoce a esta empleada aquellas licencias por enfermedad, vacaciones y/o días feriados reconocidas por la legislación y reglamentación vigentes, así como aquéllas establecidas por la oficina de Normas del Departamento del Trabajo mediante decretos. (Anejo O, Apéndices 34-35).

La apelante tampoco presentó en evidencia prueba documental, ni testifical que demostrará que la señora González hubiese dejado de trabajar para la Academia Pentecostal en el período de tiempo transcurrido entre su fecha de comienzo de trabajo y la fecha en que se suscribió este otro documento titulado Acuerdo de Servicios para Personal Docente fechado **25 de enero de·1998**. Por otro lado, del propio documento surge que el mismo se firmó cinco (5) meses y veintiún (21) días después de haber entrado en vigencia. Es decir, el mismo no se

suscribió en lo que, según la contención de la parte apelante, hubiese sido la primera jornada de trabajo de la Academia en el período de tiempo comprendido entre el 4 de agosto de 1997 y 29 de mayo de 1998.

Finalmente, la señora González y la apelante firmaron un último documento titulado Acuerdo de Servicios para Personal–Docente el **2 de agosto de 1999**, que establece un período determinado de duración que comenzaba el 2 de agosto de 1999 y culminaba el 26 de mayo de 2000; dispone un horario de trabajo de 8:00 a. m. a 3:00 p.m., a razón de un salario de $7.00 por hora y también se le reconoce aquellas licencias por enfermedad, vacaciones y/o días feriados dispuestos por ley. Dicho documento, al igual que los anteriores, fue admitido en evidencia en el acto de juicio. (Anejo N, Apéndice 33).

La parte apelante no presentó en la vista en su fondo prueba testifical, ni documental, que demostrara o acreditara que la apelada hubiese dejado de trabajar para dicha parte en el período de tiempo transcurrido entre su fecha de comienzo de trabajo y la fecha en que se suscribió el documento titulado Acuerdo de Servicios para Personal Docente fechado el 2 de agosto de 1999. La prueba demostró que la Academia la consideraba una empleada permanente.

Surge de la Transcripción ante nos, específicamente durante el contrainterrogatorio realizado al Sr. Vicente Rivera, testigo de la apelante, que se le mostró a éste un documento, marcado como Exhibit 2 de la parte apelada, suscrito el 23 de marzo de 2000, bajo el timbre de la Academia, donde se reconocía a la señora González **como una <u>empleada permanente</u> de dicha parte**. El Sr. Vicente Rivera, al ser confrontado con dicho documento, reconoció: 1) que el mismo fue suscrito por un representante de la Academia Pentecostal Betel, 2) que en el mismo se reconoce a la señora González **como una empleada permanente de la Academia Pentecostal Betel, con un salario mensual de $700.00 dólares, [2]** y 3) que para la fecha en que se suscribió el documento, la señora González era empleada de la Academia Pentecostal Bethel. Finalmente, mediante un documento de fecha 22 de mayo de 2000, la apelante notificó a la apelada que a partir del 26 de mayo de 2000 dejaría de prestar servicios para dicha parte. Ese documento fue admitido en evidencia en el acto de juicio como Exhibit 6 de la apelante.

Ni de la prueba testifical, ni de la prueba documental presentada en la vista en su fondo surge que la apelada fue notificada en forma alguna de que cesaría en su empleo con la apelante **antes del 22 de mayo de 2000**, ni de que ésta hubiese cesado en su empleo con la apelante con anterioridad al 26 de mayo de 2000. Lo que sí surge de la prueba es que la apelante se reservó en todo momento el derecho a renovar los contratos que eran firmados por la apelada.

· La Academia Pentecostal apoya su señalamiento de que la señora González carece de un derecho a lo que reclama en *"el principio de libertad de contratación recogido en los Artículos 1207, 1210, 1233 y 1434 del Código Civil de Puerto Rico, 31 L.P.R.A. Seccs. 3372, 3375, 3471 y 1434, respectivamente."* Dichos articulados, en síntesis, establecen que las partes contratantes tienen libertad de establecer en sus contratos los pactos, cláusulas y condiciones que tengan por convenientes, siempre que no sean contrarias a las leyes, la moral y al orden público.

La Ley Núm. 7 de 1 de marzo de 1988, ley que enmendó el Artículo 1 de la Ley Núm. 80 de 30 de mayo de 1976, dispuso en su exposición de motivos, su preocupación respecto a la práctica demostrada por algunos patronos en Puerto Rico, de reclutar a su personal a base de contratos vencederos mensualmente o anualmente, renovables o no a la voluntad del patrono, con el propósito de que ello sirva como mecanismo de subterfugio para evadir el cumplimiento de la citada Ley Núm.80. En virtud de dicha enmienda, el mero hecho de que un empleado preste servicios al amparo de un contrato de trabajo por tiempo determinado, **por sí sólo**, no tendrá el efecto automático de privarle de la protección de esta ley, si las circunstancias envueltas u otra evidencia en la contratación fueren de tal naturaleza que tiendan a indicar la creación de una expectativa de continuidad en el empleo o aparentado ser un contrato por tiempo indeterminado *bonafide*. Según la citada disposición de ley, **en**

**esos casos,** los empleados serán considerados como si hubiesen sido contratados sin tiempo determinado.

La Ley Núm. 80, *supra*, dispone en su Artículo 11, ▇ una serie de requisitos con los que los contratos de trabajo por tiempo determinado tienen que cumplir para ser considerados como contratos de trabajo por tiempo determinado *bonafide*, teniendo así el efecto de privar al empleado contratado de la protección provista por la referida ley. Para que un contrato de trabajo por tiempo determinado tenga el efecto de hacer inaplicable las disposiciones de la Ley Núm. 80, *supra*, el mismo debe:

*"1. Hacerse por escrito,*

*2. Suscribirse en la primera jornada de trabajo del empleado,* ▇

*3. Tener el propósito y hacerlo constar, de sustituir durante su ausencia a un empleado en el uso de una licencia legalmente establecida, o establecida por el patrono, o para llevar a cabo tareas extraordinarias o de duración cierta fija."*

La única excepción al requisito constitutivo de que el contrato de trabajo por tiempo determinado sea suscrito durante la primera jornada de trabajo del empleado la encontramos en la propia Ley Núm. 80, cuando dispone que en el caso de empleados contratados por intermediación de compañías de servicios temporeros, el contrato se podrá suscribir durante los primeros diez días de trabajo del empleado. Fuera de esta única excepción, no se ha reconocido ninguna otra, ni por la vía estatutaria, ni por la jurisprudencia. El presente caso no presenta una excepción.

La Academia Pentecostal plantea que la señora González fue cesanteada de su empleo debido a una merma en el número de estudiantes matriculados para el semestre académico que comenzó en agosto de 2000. Sostiene que <u>no</u> contrató a ninguna otra persona luego de la cesantía de la apelada.

Surge de la evidencia testifical presentada, específicamente del testimonio del Sr. Edwin Lugo González: 1) que la señora González ofrecía los cursos del tercer grado; 2) que la razón para su cesantía fue la merma en la matrícula de estudiantes de tercer grado; 3) que los estudiantes de tercer grado fueron asignados a otra maestra de nombre Ramonita Echandy, quien también ofrecía el curso de tercer grado; 4) que el testigo no sabía cuándo comenzó a trabajar en la institución la Sra. Ramona Echandy; 5) que luego se divide el grupo de estudiantes de tercer grado en dos grupos; 6) que uno de los grupos es asignado a una maestra de nombre Lourdes Lagares; 7) que Lourdes Lagares ofrecía clases de preescolar, y 8) que no podía decir con exactitud si la Sra. Lourdes Lagares tenía más experiencia que la aquí apelada. ▇ El testimonio del Sr. Vicente Rivera Guzmán, por su parte, se limitó, en lo pertinente, a expresar **cuál** fue la razón por la que, a su entender, la apelada dejó de trabajar para la apelante. ▇

La Ley Núm. 80, *supra*, en su Artículo 2, 29 L.P.R.A. sec. 185b, reconoce como una justa causa para el despido de un empleado, las reducciones de empleo que se hacen necesarias debido a una merma en el volumen de producción, ventas o ganancias, anticipadas o que prevalecen al ocurrir el despido. No obstante, de ser tal el caso, por virtud de lo dispuesto en el Artículo 3 de la referida Ley Núm. 80, *supra*, ▇ el patrono estará obligado a retener con preferencia en el empleo **a los empleados de más antigüedad**, siempre que subsistan puestos vacantes u ocupados por empleados de menos antigüedad en el empleo dentro de su clasificación ocupacional. Así, también, deberá dar preferencia a los empleados más antiguos en casos de que dentro de los seis meses siguientes a la cesantía tuviere necesidad de emplear a una persona en labores iguales o similares a la que desempeñaban dichos empleados al momento del despido. La única excepción a la referida preferencia de retención de empleados por razón de antigüedad lo encontramos en el mismo articulado, cuando expresa que, en aquellos casos en los que haya una diferencia, clara ó inconcursa a favor de la eficiencia o capacidad de trabajadores comparados, prevalecerá la capacidad.

Si bien es cierto que la apelante presentó prueba a los efectos de que hubo reducción en la matrícula de la Academia administrada por dicha parte y que esa fue la razón por la cual la apelada dejó de trabajar para dicha parte, también es cierto que dicha parte no presentó prueba que demostrara que, ante tal situación, respetó el criterio de preferencia por antigüedad dispuesto en la Ley Núm. 80, *supra*. ■

Por último, la apelante cuestiona el cálculo de la compensación de $2,531.60 concedido por el foro de instancia como indemnización por despido.

La indemnización aquí concedida es una indemnización **estatutaria**. No incluye la cuantificación de daños, perjuicios ni otros beneficios. Su cómputo se hace a base del número de años trabajados por el empleado y el salario más alto devengado por éste en los últimos tres años de empleo. La contención de la apelante de que **cualquier cuantía anterior** al año 1999 está preescrita, no se sostiene en derecho. La Ley Núm. 80, *supra*, es clara al señalar que se tomará en consideración **el número total de años trabajados**. De la prueba presentada en este caso, surge que la señora González comenzó a prestar servicios para la apelante durante el año 1992 y cesó en sus funciones en el año 2000. No se presentó prueba testifical o documental que demostrara que hubo una interrupción en la relación obrero-patronal durante el período de tiempo antes mencionado y uno de los testigos de la apelante, específicamente el Sr. Vicente Rivera Guzmán, reconoció, mediante documento presentado en evidencia, que la apelada era **una empleada permanente con un salario de $700.00 mensuales.**

## II

Luego de un análisis de la totalidad de la prueba que el foro recurrido tuvo ante sí, somos del criterio que el resultado alcanzado representa un balance racional y justiciero de la misma, razón adicional para dar entero respeto y deferencia al arbitrio del juzgador del foro recurrido.

Ante ello, se confirma la sentencia apelada.

Notifíquese.

Así lo pronunció y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

### ESCOLIOS 2004 DTA 126

1. *"Erró el Honorable de Primera Instancia, Sala Superior de Mayagüez, al no determinar que la apelada había sido contratada por tiempo determinado.*

*Erró el Honorable de Primera Instancia, Sala Superior de Mayagüez, al no determinar que la apelada fue cesanteada con justa causa.*

*Erró el Honorable de Primera Instancia, Sala Superior de Mayagüez, al no incluir en su Sentencia una determinación de hechos sobre cómo calculó la suma de la compensación concedida a la apelada por concepto de Ley 80.*

*Erró el Honorable de Primera Instancia, Sala Superior de Mayagüez, al determinar que la apelante venía obligada a seguir un plan de cesantías por antigüedad."*

2. Véase Transcripción de Vista en su Fondo, página 52, que lee como sigue:

*"P. Sí. Oiga, y lo cierto es que en este documento la señora, la Sra. Elena Román Ruiz, como representante de la Academia Pentecostal Betel, reconoce que la Sra. Amelia González era empleada de dicha academia, permanente, con un salario de $700.00. ¿Lo dice o no lo dice ese documento? ¿Sí o no?*

*R. Qué, que usted me está preguntando que sea una realidad, o lo que se, lo que diga el documento. ¿Qué usted quiere saber?*

*P. Vuelvo y se la repito, le voy a repetir la pregunta. ¿Si es cierto o no que la Sra. Elena Román Ruiz, al suscribir el documento, y ya usted dijo que era representante de la academia...*

*R. Si es cierto qué dice... tenía una función.*

*P. ...espérese, no he terminado, no he terminado, déjeme contestar... terminar la pregunta. Si es cierto que esta señora al suscribir el documento reconoció que la querellante era una empleada permanente de la Academia con un salario mensual de $700.00. ¿Sí o no? ¿Lo reconoció, sí o no, en el documento?*

*R. En el documento, cuando...*

*P. Sí, en el documento...*

*R. En el documento, como tal, sí.*

*P. Sí.*

*R. Sí."*

**3.** 29 L.P.R.A. sec. 185a

**4.** La Ley 379 de 15 de mayo de 1948, en su Artículo 2; 29 L.P.R.A. sec. 271, define el término jornada legal diaria de trabajo como un término de ocho horas de trabajo. Así las cosas, es inevitable concluir que el término primera jornada de trabajo expresado en la Ley Núm. 80 de 30 de mayo de 1976 se refiere al primer día de trabajo, o lo que es igual, las primeras ocho horas de trabajo del empleado.

**5.** Véase Transcripción de Evidencia, páginas 17, 18 y 19.

**6.** Véase Transcripción de Evidencia, página 43, que lee como sigue:

*"P. Ok. Eh... Obviamente, verdad. Este... le pregunto eh... cómo usted le explicaría a este honorable Tribunal... o sea, que sus... cómo usted le explicaría la razón por la cual la Sra. Amelia González dejó de trabajar para la institución.*

*R. La..., la práctica de contratación de la Academia, nosotros tenemos... una matrícula flotante. Constantemente y especialmente en el área oeste que ha habido cierres de tantas fábricas, este, hay personas que mantienen a sus hijos en educación privada. Cuando cesan sus, sus trabajos, pues los pasan a... a instituciones públicas. Para esa época nosotros comenzamos a ver un número descendente de... del... de la matrícula. Y habiendo dos... dos terceros como hubieron (sic) otros grados que también hubo que, que nombrar solamente un maestro, pues en el caso de ella, hay solamente un tercero y no se le pudo re... este renovar el contrato."*

**7.** 29 L.P.R.A. sec. 185c.

**8.** En una acción por despido injustificado, el patrono tiene el peso de la prueba para establecer que el despido estuvo justificado. Es decir, que todo despido es injustificado hasta tanto el patrono demuestre justa causa para su acción. Por lo tanto, al patrono interponer como defensa afirmativa el haber mediado justa causa para el despido, le corresponde entonces probar, por preponderancia de prueba, que el mismo estuvo justificado. Véase *Díaz Fontánez v. Wyndham Hotel*, **2001 J.T. S. 146.**